**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | : |
| **Applicant,** | : |
| **-against-** | : |
| **GP CAPITAL GROUP, INC. and SHANNON W. ILLINGWORTH,** | : |
| **Respondents.** | : |

**MEMORANDUM OF LAW IN SUPPORT OF SECURITIES AND EXCHANGE COMMISSION'S APPLICATION FOR AN ORDER TO SHOW CAUSE AND FOR AN ORDER REQUIRING COMPLIANCE WITH SUBPOENAS**

**Michael D. Paley**
**Richard Hong**
**Thomas W. Peirce**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**100 Pearl Street, Suite 20-100**
**New York, NY 10004-2616**
**(212) 336-0956 (Hong)**
**Email: HongR@sec.gov**

July 27, 2022

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .... ii

**PRELIMINARY STATEMENT** .... 1

**STATEMENT OF FACTS** .... 1

A. The GP Capital Group's Sale-Leaseback Investment Offering .... 1

B. The Commission Investigation .... 3

C. The Subpoenas .... 4

1. The Commission issues the subpoenas to the Respondents .... 4

2. The Respondents request their first extension of time to respond to the subpoenas .... 5

3. The Respondents repeatedly represent they will comply with the subpoenas, with additional time, but fail to do so each time .... 5

4. The Commission provides repeated notice to the Respondents that a subpoena enforcement action will be pursued for continued non-compliance .... 7

**ARGUMENT** .... 8

A. The GP Capital Group and Illingworth Subpoenas Should be Enforced .... 8

B. Respondents Have No Legitimate Explanation for Their Failure to Comply with the Subpoenas .... 10

**CONCLUSION** .... 12

## TABLE OF AUTHORITIES

**Cases**

*Endicott Johnson Corp. v. Perkins,* 317 U.S. 501 (1943)....................9, 11

*FTC v. Texaco, Inc.*, 555 F.2d 862 (D.C. Cir. 1977)....................11

*In the Matter of GP Solutions, Inc.*
Exchange Act Release No. 87203, 2019 WL 4915972 (Oct. 2, 2019)....................3

*In re McVane*, 44 F.3d 1127 (2d Cir. 1995)....................8, 9

*RNR Enters., Inc. v. SEC*, 122 F.3d 93 (2d Cir. 1997)....................8, 9, 10, 11

*SEC v. Arthur Young & Co.*, 584 F.2d 1018 (D.C. Cir. 1978)....................9

*SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047 (2d Cir. 1973)....................11

*SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735 (1984)....................8

*United States v. Construction Products Research, Inc.*, 73 F.3d 464 (2d Cir. 1996)....................11

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950)....................8

**Regulations**

15 U.S.C. § 77t(a)....................3, 9

15 U.S.C. § 78u(a)(1)....................3, 9

15 U.S.C. § 78u(b)....................10

15 U.S.C § 78u(c)....................8

17 C.F.R. § 201.150(c)(3)....................10

17 C.F.R. § 201.232(c)....................10

The Securities and Exchange Commission ("Commission") respectfully submits this memorandum of law in support of its Application for an Order to Show Cause and for an Order Requiring Compliance with Subpoenas ("Application"). As discussed below, and in the accompanying Declaration of Thomas W. Peirce ("Peirce Decl.") and the exhibits thereto, the Commission respectfully requests that the Court enter an order, in the form attached to the Commission's Application, directing Respondents GP Capital Group, Inc. ("GP Capital Group") and Shannon W. Illingworth ("Illingworth") to comply with administrative subpoenas issued to them.

## PRELIMINARY STATEMENT

The Commission has been investigating whether GP Capital Group, a purported financial services corporation, and its president, Illingworth, may have violated the federal securities laws by engaging in an unregistered securities offering. As part of its investigation, the Commission issued and served GP Capital Group and Illingworth with administrative subpoenas directing them to produce relevant documents within 14 days.

More than a year later, GP Capital Group and Illingworth have failed to comply with the subpoenas. Instead, counsel for GP Capital Group and Illingworth, who has represented that he has control and custody of the responsive documents, has made a series of promises to comply with the subpoenas, if additional extensions of time were provided, to be followed up with a panoply of excuses to justify non-compliance. The Court should order GP Capital Group and Illingworth to comply with the subpoenas forthwith so that the Commission can continue its investigation.

## STATEMENT OF FACTS

### A. The GP Capital Group's Sale-Leaseback Investment Offering

GP Capital Group, a corporation based in Corona, California, purports to be a financial services company. (Peirce Decl. ¶ 4.) GP Capital Group is not registered with the Commission. *Id*. Illingworth is President of GP Capital Group and founder and Director of GP Solutions, Inc. (*Id*. ¶ 5.)

Since at least May 2020 through the present, GP Capital Group has offered investors a sale-leaseback investment. (*Id*. ¶ 6.) For this investment, GP Capital Group offers investors the opportunity to purchase a shipping container ("POD") from GP Capital for $100,000 and simultaneously leases it back to GP Capital Group which will use them for cannabis cultivation, sharing the profits with the investor. (*Id*. ¶ 6.) GP Capital Group's offering is a general solicitation on-line and through cold-calls. (*Id*.)

According to GP Capital Group's investment prospectus, the PODs are "40-foot cultivation rooms placed in state of the art, highly advanced grow complexes." (Ex. 13 at unmarked page 2.)[1] Investors are promised a "20% annual return" by sharing the profits from the sale of cannabis which is cultivated in the PODs. (*Id*. at unmarked page 6.) After five years, the investor can either sell back their container for $75,000 or renew the lease for another five years. (*Id*.) The cover of the prospectus states: "Let Your Money Grow With the Pros" and describes the investment as "5 Star Rated," "High Yield Investment," and "Asset Backed." (Ex. 13 at unmarked page 1.)

Since at least May 2022, GP Capital Group also solicited investors with a modified offering document promising a "12% annual return" on POD's purchased for $120,000 and

---

[1] All exhibits are attached to Peirce Decl.

leased-back to GP Capital Group for ten years. ((Peirce Decl. ¶ 6; Ex 17.)

In addition, GP Capital Group has offered investors shares in GP Solutions, Inc. ("GP Solutions") and Advanced Container Technologies, Inc. ("Advanced Container Technologies"), two microcap companies trading on the OTC markets under the ticker symbols, "GWPD" and "ACTX," respectively. (Peirce Decl. ¶ 8.) In particular, GP Solutions has, since at least 2018, sold hundreds of thousands of shares to investors. (*Id.*) These shares have been offered and/or sold by employees and affiliated persons of GP Solutions and GP Capital Group who are not registered brokers. (*Id.*)

## B. The Commission Investigation

On July 7, 2020, the Commission issued an Order Directing Private Investigation and Designating Officers to Take Testimony (the "Formal Order") pursuant to Section 20(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77t(a)], and Section 21(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(a)]. (Peirce Decl. ¶ 9.) The Formal Order designates certain individuals as officers of the Commission empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records deemed relevant or material to the investigation. (*Id.*)

The Commission is investigating whether the sale-lease back offering of PODs constitutes an unregistered offering of securities without exemption and whether material misrepresentations have been made in connection with the offering. (Peirce Decl. ¶ 7.) In addition, the Commission is investigating whether GP Capital Group has acted as an unregistered dealer and whether employees and associated persons of GP Capital Group and GP Solutions have acted as unregistered brokers and made material misrepresentations in the offer and sale of

securities.[2] (*Id.* ¶ 8.)

**C. <u>The Subpoenas</u>**

**1. The Commission issues the subpoenas to the Respondents.**

On July 9, 2021, the Commission, through an officer designated by the Commission's Formal Order, issued subpoenas to GP Capital Group and Illingworth in furtherance of the Commission's investigation. (Peirce Decl. ¶¶ 7-8, 11, Exs. 1, 2.) The Commission sought information relevant to the Commission's investigation, *i.e.*, whether any individuals or entities affiliated with GP Capital Group and/or GP Solutions had violated the federal securities laws by offering and/or selling unregistered securities without exemption and acting as unregistered broker-dealers. (*Id.*) The subpoenas issued to GP Capital Group and Illingworth required that they produce documents to the Commission on July 23, 2021. (Peirce Decl. ¶ 11, Exs. 1, 2.)

After confirming that Randy Katz, Esq., counsel for GP Capital Group and Illingworth ("Respondents' counsel"), would accept service of the subpoenas, the Commission emailed the subpoenas for GP Capital Group and Illingworth to the Respondents' counsel's attention. (Peirce Decl. ¶ 11.) Respondents' counsel responded by asking for a copy of the Formal Order of investigation. (*Id.* ¶ 12, Ex. 4) (a third subpoena was also issued to counsel's attention for GP Solutions, Inc. Responsive documents were ultimately provided in March 2022). (Peirce Decl. ¶ 7.) The subpoenas were also sent via UPS to the Respondents' counsel's attention and were delivered on July 14, 2021. (*Id.* ¶ 13, Ex. 5.)

---

2 The Commission previously issued an Order announcing the temporary suspension of trading in the securities of GP Solutions. *See In the Matter of GP Solutions, Inc.,* Exchange Act Release No. 87203, 2019 WL 4915972 (Oct. 2, 2019).

**2. The Respondents request their first extension of time to respond to the subpoenas.**

On July 27, 2021, the Commission emailed the Respondents' counsel for a status on the production that was due on July 23, and asked if an extension would be required. (Peirce Decl. ¶ 14, Ex. 6.) Respondents' counsel responded the same day that he needed an extension to the "end of August." (*Id.*) The Commission agreed to the extension to August 27 and acknowledged the Respondents' counsel's representations that he would provide a limited rolling production in the interim. (*Id.*)

On August 22, the Commission reached out to the Respondents' counsel for a status. (Peirce Decl. ¶ 14.) He responded that responsive documents were being gathered. (*Id.*) On August 27, the Commission emailed to confirm that documents would be forthcoming. (*Id.*) The Respondents' counsel responded the same day that he would "roll documents" to the Commission's attention "starting on Monday" (August 30). (*Id.*)

On Tuesday, August 31, the Respondents' counsel emailed that he was "in the process of assembling documents for the production" and would send them via thumb drive. (Peirce Decl. ¶ 14.) The same day the Commission emailed requesting clarification of what documents were going to be produced and providing the mailing address he should use for sending a thumb drive. (*Id.*)

**3. The Respondents repeatedly represent they will comply with the subpoenas, with additional time, but fail to do so each time.**

On September 29, 2021, having received no documents or updates from the Respondents' counsel, the Commission sent him correspondence via email and UPS notifying him that his clients, GP Capital Group and Illingworth, were in noncompliance with the subpoenas and asking for a status. (Peirce Decl. ¶ 15, Ex. 7.) On October 14, the Respondents' counsel

responded, "I think I have now gathered everything and am confirming with the three clients. I'll revert tomorrow (I hope) with confirmation." (*Id.*)

On November 9, 2021, having not heard from the Respondents' counsel and having received no production of documents, the Commission emailed for a status. (Peirce Decl. ¶ 15.) Respondents' counsel responded on November 18, 2021 that he was going to produce a thumb drive and asked what address to use. (*Id.*) The Commission responded the same day, provided the address of the Commission's Central Processing Unit ("CPU") which receives documents, and asked for clarification on what documents were going to be produced. On November 30, 2021, having once again received no documents or update, the Commission emailed the Respondents' counsel for a status. (*Id.*)

On February 1, 2022, having still not received any update or documents, the Commission emailed the Respondents' counsel requesting a status of the subpoenaed documents and confirmation that he remained counsel for GP Capital Group and Illingworth. (Peirce Decl. ¶ 16, Ex. 8.) The Respondents' counsel emailed back the same day and asked "What might be a good time for a chat". (*Id.*) A call was then scheduled for February 4. (*Id.*) In the call on February 4, 2022, the Respondents' counsel represented that he would be producing documents in a week. (*Id.*)

On February 25 and 28, 2022, having not received documents or a status, the Commission emailed the Respondents' counsel for a status. (Peirce Decl. ¶ 16.) On March 3, 2022, with no response, the Commission sent an invitation for a phone call later that same afternoon. (*Id.*) Receiving no response, the Commission re-scheduled the call to March 4, 2022. (*Id.*)

On March 4, 2022, the Commission (including then-Associate Regional Director Lara S.

Mehraban of the Commission's New York Regional Office) spoke with the Respondents' counsel on the phone and requested a status of the document production. (Peirce Decl. ¶ 17, Ex. 9.) In the call, the Respondents' counsel represented that he had custody and control over all responsive documents for the three parties (GP Capital Group, GP Solutions, and Illingworth) and agreed that he would produce responsive documents over the next three weeks, making one production each week. (*Id*.). Respondents' counsel represented that no documents would be withheld for any reason, including privilege. (*Id*.)

On March 22, 2022 having not produced documents responsive to GP Capital Group and Illingworth as agreed, the Commission emailed the Respondents' counsel for another status. (Peirce Decl. ¶ 18, Ex. 10.) On March 30, 2022, the Respondents' counsel responded: "Hate to do this to you. My kid is here for the morning and I'm bogged down with finalizing four 10-Ks for filing today and tomorrow. Could we roll to early next week, for ex. Tuesday?" (*Id.*) The Commission responded the same day asking for clarification why the productions of GP Capital Group and Illingworth were not produced on March 9 and March 16, 2022 as had been agreed. (*Id*. ¶ 18, Ex. 10.)

**4. The Commission provides repeated notice to the Respondents that a subpoena enforcement action will be pursued for continued non-compliance.**

On April 19, 2022, having still not received a response or production of documents, the Commission emailed the Respondents' counsel and said that if the responsive documents were not produced by May 2, 2022, the Commission would pursue a subpoena enforcement action. (Peirce Decl. ¶ 19, Ex. 11.) On May 2, 2022, the Respondents' counsel responded that he would "revert in the next day or two about timing." (*Id*. ¶ 20, Ex. 12.) The Commission responded by reiterating that absent production of documents the following day, it would pursue a subpoena enforcement action. (*Id.*)

To date, more than one year after the issuance of the subpoenas, the Respondents' counsel has not responded and his clients, GP Capital Group and Illingworth, have not produced the subpoenaed documents. (Peirce Decl. ¶ 21.)

## ARGUMENT

### A. The GP Capital Group and Illingworth Subpoenas Should Be Enforced.

The Commission has "broad authority to conduct investigations into possible violations of the federal securities laws and to demand production of evidence relevant to such investigations." *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741 (1984). Section 21(c) of the Exchange Act, 15 U.S.C § 78u(c), authorizes the Commission to seek an order from this Court compelling respondents to comply with the subpoenas.[3]

The Second Circuit has explained that the courts' role in a proceeding to enforce an administrative subpoena is extremely limited." *RNR Enters., Inc. v. SEC*, 122 F.3d 93, 96–97 (2d Cir. 1997). Enforcement of an administrative subpoena is warranted if the information sought is "within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950). Thus, a court need only conclude that: (1) the inquiry is being conducted for a legitimate purpose within the Commission's authority, (2) the information sought is relevant to that purpose, (3) the information is not within the Commission's possession, and (4) the subpoenas were issued in accordance with the requisite administrative procedures. *RNR Enters.,* 122 F.3d at 96. "An affidavit from a government official is sufficient to establish a *prima facie* showing

[3] Under Exchange Act Section 21(c), venue in this matter properly lies in the Southern District of New York because this district is "the jurisdiction [in] which [the] investigation . . . is carried on." 15 U.S.C. § 78u(c).

that these requirements have been met." *In re McVane*, 44 F.3d 1127, 1136 (2d Cir. 1995).

Here, the Commission satisfies each of the four requirements for enforcement of the subpoenas issued to GP Capital Group and Illingworth as follows:

*First*, the Commission's investigation is being conducted for a legitimate purpose within the Commission's authority to investigate whether any persons or entities have violated provisions of the Securities Act or the Exchange Act. Section 20(a) of the Securities Act, 15 U.S.C. § 77t(a), and Section 21(a)(1) of the Exchange Act, 15 U.S.C. § 78u(a)(1), expressly authorize the Commission to investigate suspected violations of the Securities Act and the Exchange Act and the rules thereunder.

Here, the Commission is investigating whether anyone violated the federal securities laws in connection with a sale-leaseback investment offering by GP Capital Group and the private offer and sale of securities by employees and associated persons of GP Capital Group and GP Solutions. The sale-leaseback offering may constitute an unregistered offering of securities without exemption and material misrepresentations may have been made in connection with both the sale-leaseback offering and the offer and sale of shares of GP Solutions and Advanced Container Technologies. Thus, the Commission's investigation is being conducted for a legitimate purpose within the Commission's authority. *See RNR Enters.*, 122 F.3d at 97 (holding that an investigation into potential securities law violations reflects a "legitimate investigatory purpose").

*Second*, the information that the Commission is seeking from GP Capital Group and Illingworth is relevant to the Commission's investigation. To satisfy this requirement, the Commission need only show that the information sought is "not plainly incompetent or irrelevant to any lawful purpose." *SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1029 (D.C. Cir. 1978)

(*quoting Endicott Johnson Corp. v. Perkins,* 317 U.S. 501, 509 (1943)). Courts "defer to the agency's appraisal of relevancy, which must be accepted so long as it is not obviously wrong." *RNR Enters.*, 122 F.3d at 97 (quoting *In re McVane*, 44 F.3d at 1135).

Here, the subpoenas call for GP Capital Group and Illingworth to provide information concerning the offer and sale of securities. (Peirce Decl. ¶ 11, Exs. 1, 2.) Thus, the subpoenas seek information that is relevant to the Commission's investigation. *RNR Enters.,* 122 F.3d at 97. Tellingly, neither GP Capital Group nor Illingworth has objected to the subpoenas on any grounds, including relevance.

*Third*, the Commission does not possess the information sought in the subpoenas to GP Capital Group and Illingworth. (Peirce Decl. ¶ 10.) Neither GP Capital Group nor Illingworth has produced documents in response to the subpoenas.

*Finally*, the subpoenas comply with applicable administrative procedures. In particular, an officer designated by the Commission issued the subpoenas. (Peirce Decl. ¶¶ 9, 11; *see also* Exchange Act Section 21(b), 15 U.S.C. § 78u(b) (authorizing issuance of subpoenas)). Further, the Commission properly served the subpoenas. (*Id*. ¶¶ 11, 13; *see also* 17 C.F.R. §§ 201.150(c)(3) and 201.232(c) (authorizing service of administrative subpoenas via commercial courier service)).

Accordingly, the Commission has established a *prima facie* showing that enforcement of the subpoenas issued to GP Capital Group and Illingworth is warranted.

**B. Respondents Have No Legitimate Explanation For Their Failure to Comply with the Subpoenas.**

Once the Commission has made a *prima facie* showing, a respondent seeking to defeat enforcement of a Commission subpoena bears the burden of demonstrating that the subpoena is "unreasonabl[e]", or "issued in bad faith or for an 'improper purpose,'" or "compliance would be

'*unnecessarily* burdensome.'"[4] *RNR Enters.*, 122 F.3d at 97 (quoting *SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1056 (2d Cir. 1973)) (emphasis in original).

Respondents have no legitimate explanation for their refusal to comply with the lawful subpoenas for more than a year. As discussed above, the Respondents' counsel has repeatedly represented that he has control and custody of the responsive documents and that GP Capital and Illingworth's responsive documents would be produced by a date certain or by rolling production. In addition, the Respondents' counsel has stated that no documents would be withheld for any reason, including privilege.

Still, after a year's worth of promises that all responsive documents would be produced, the Respondents have failed to comply with the subpoenas. Nothing has been produced to the Commission. Indeed, the Respondents appear intent on delaying and hindering the Commission's investigation by simply not complying with the subpoenas. Thus, GP Capital Group and Illingworth cannot demonstrate that the Commission acted unreasonably or improperly in issuing subpoenas, and, given that they had represented that all responsive documents would be produced, the Respondents have no reasonable basis for its refusal to comply with the subpoenas.

---

4 The Respondents cannot contest the subpoenas by suggesting that they did not violate the federal securities laws. *See, e.g., Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943); *United States v. Construction Products Research, Inc.*, 73 F.3d 464, 470 (2d Cir. 1996); *see also FTC v. Texaco, Inc.*, 555 F.2d 862, 879 (D.C. Cir. 1977) ("If parties under investigation could contest substantive issues in an enforcement proceeding, when the agency lacks the information to establish its case, administrative investigations would be foreclosed or at least substantially delayed.").

## CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court order the Respondents GP Capital Group and Illingworth to show cause why they should not comply with the subpoenas issued to them, and, after a hearing, order them to comply fully with the subpoenas.

Dated: July 27, 2022
New York, New York

Respectfully Submitted,

/s/ Richard Hong

Richard Hong
Attorney for Applicant
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004-2616
(212) 336-0956 (Hong)

Of Counsel:

Michael D. Paley
Thomas W. Peirce